IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Civil Action No. 16-cv-02065-RM

BRICKLAYERS AND TROWEL
TRADES INTERNATIONAL PENSION FUND (IPF);
BRICKLAYERS & ALLIED CRAFTWORKERS
INTERNATIONAL HEALTH FUND (IHF);
COLORADO TROWEL TRADES JOINT
APPRENTICESHIP AND TRAINING FUND; and
INTERNATIONAL MASONRY INSTITUTE (IMI),

    Plaintiffs,

v.

THE DENVER MARBLE COMPANY,

    Defendant.

___

**ORDER**
___

This matter is before the Court on Plaintiffs' Renewed Motion for Entry of Default Judgment and for Award of Attorneys' Fees and Non-Taxable Costs (Motion, ECF No. 26). The case involves Plaintiffs' alleged rights to monetary contributions under the Employee Retirement Income Security Act ("ERISA") and a Collective Bargaining Agreement ("CBA"). The Court denied Plaintiffs' first motion for default judgment because they had not provided (A) a clear indication of the specific source of recovery requested (ERISA or CBA) or sufficient proof to support said recovery, matched to the elements of an ERISA claim; and (B) direction as to whether they maintained their request for injunctive relief. (*Id.* at 3–4.) The instant Motion cures only some of these defects; therefore, it is **DENIED** without prejudice.

## I. LEGAL STANDARD

A party may not simply sit out the litigation without consequence. *See Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444–45 (10th Cir. 1983) ("[A] workable system of justice requires that litigants not be free to appear at their pleasure. We therefore must hold parties and their attorneys to a reasonably high standard of diligence in observing the courts' rules of procedure. The threat of judgment by default serves as an incentive to meet this standard.").

"Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." 10A Wright et al., Fed. Prac. & Proc. § 2688, at 63. Additionally, a court need not accept conclusory allegations. *Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1232 (10th Cir. 2002). Although "[s]pecific facts are not necessary" in order to state a claim, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), the well-pleaded facts must "permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks and alteration marks omitted). "[A] party is not entitled to a default judgment as of right; rather the entry of a default judgment is entrusted to the 'sound judicial discretion' of the court." *Greenwich Ins. Co. v. Daniel Law Firm*, No. 07-cv-2445-LTB-MJW, 2008 WL 793606, at *2 (D. Colo. Mar. 22, 2008) (citation omitted, brackets in original); *Tripodi v. Welch*, 810 F.3d 761, 764 (10th Cir. 2016) (default judgment committed to court's sound discretion).

Following a clerk's entry of default, courts follow two steps before granting default judgment. First, a court must ensure it has subject matter and personal jurisdiction. *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986); *Marcus Food Co. v. DiPanfilo*, 671

F.3d 1159, 1166 (10th Cir. 2011) (default judgment against defendant over whom court has no personal jurisdiction is void). Second, courts consider whether the well-pleaded allegations of fact—which are admitted by a defendant upon default—support a judgment on the claims against the defaulting defendant. *See Tripodi*, 810 F.3d at 764 (by his default, defendant relieved plaintiff from having to prove complaint's factual allegations; the judgment, however, must be supported by sufficient basis in the pleadings).

Where the complaint states an adequate legal basis for relief against a party in default, default judgment may be appropriate. *Mrs. Condies Salad Co. v. Colorado Blue Ribbon Foods, LLC*, 858 F. Supp. 2d 1212, 1218 (D. Colo. 2012). The Court also accepts as undisputed any facts set forth by the moving party in affidavits and exhibits. *Purzel Video GmbH v. Biby*, 13 F. Supp. 3d 1127, 1135 (D. Colo. 2014).

## II. BACKGROUND

This is an action for alleged unpaid contributions under ERISA, 29 U.S.C. 1132(g)(2)(A), and pursuant to the CBA. Specifically, in a single claim for relief, Plaintiffs' Complaint against Defendant Denver Marble Company ("Denver Marble") seeks any unpaid contributions "as well as any other contributions determined as due by audit, timecards, or otherwise pursuant to ERISA"; liquidated damages on all late-paid and unpaid contributions under the CBA and ERISA; interest; attorneys' fees and costs, including audit fees; injunctive relief; and the Court to retain jurisdiction pending compliance with any court order. (ECF No. 1, at 8–9.)

Denver Marble was served with the Complaint but failed to timely answer or otherwise respond. Upon Plaintiffs' motion, the Clerk entered default against Defendant. (ECF Nos. 17, 18.) Thereafter, Plaintiffs filed an initial motion for default judgment (First Motion, ECF No. 23), which the Court denied without prejudice. (Denial Order, ECF No. 24.)

As laid out in the Denial Order, the Court is satisfied that it has jurisdiction over the claims presented and Denver Marble itself. (*Id.* at 3.) But problematically, the Court was left without (A) a clear indication of the specific source of recovery requested (ERISA or CBA) or sufficient showing that Plaintiffs may recover, matched to the elements of an ERISA claim; and (B) direction as to whether Plaintiffs maintained their request for injunctive relief or that such relief is available under the circumstances. (*Id.* at 3–4.) Having failed to receive guidance from Plaintiffs on these issues, the Court declined to enter default judgment and denied the First Motion without prejudice.

### III. ANALYSIS

The Court's jurisdiction has not changed. (*See* Denial Order at 3.) Thus, the Court turns to whether—taking the well-pleaded factual allegations as true—it may enter a final default judgment at this juncture.

#### A. Denver Marble may be liable to Plaintiffs under ERISA because of its failure to make contributions as set forth in the CBA.

The Court found the First Motion unclear as to the specific source of authority for the requested recovery. (*Id.*) Now, Plaintiffs clarify their status as "multi-employer funds established pursuant to ERISA that provide pension and other benefits to Union-member employees who work in the construction industry under collective bargaining agreements ("CBAs")[1] negotiated between union affiliates and employers." (Motion at 7 (citing 2d Stupar Decl. at 2).)[2] They further explain that their benefit-collection methods are governed generally by ERISA and

---

[1] The collective bargaining agreement between Plaintiffs and Denver Marble is referred to herein singularly as the "CBA."

[2] Plaintiffs have filed two declarations by Mr. Stupar, which are dated January 12, 2017 (Stupar Decl., ECF No. 21) and March 20, 2018 (2d Stupar Decl., ECF No. 26-1).

specifically by internal agreements and collection procedures. (*Id.*)[3] But when it comes to from whom those benefits are to be collected, Plaintiffs cite 29 U.S.C. § 1145 for the principle that "employers [are required] to make fringe benefit contributions consistent with the collective bargaining agreements to which the employer is bound." (*Id.* at 8.) Thus, Plaintiffs summarize that "ERISA and the CBA are not, in reality, two separate sources upon which recovery is sought but, instead, one inter-twined obligation." (*Id.*) The Court agrees.

While Plaintiffs generally allege that Denver Marble has both contractual and statutory duties to make timely payments, any ERISA obligations of Denver Marble flow from—and not independently of—the existence of recognizable contractual legal obligations. 29 U.S.C. § 1132(a) ("A civil action may be brought . . . to recover benefits due to him *under the terms of his plan*, to enforce rights *under the terms of the plan*, or to clarify his rights to future benefits *under the terms of the plan*.") (emphasis supplied). *See also Reg'l Dist. Council v. Mile High Rodbusters, Inc.*, 82 F. Supp. 3d 1235, 1240 (D. Colo. 2015) (granting the plaintiffs' motion for default judgment, and finding that defendants' delinquency pursuant to a collective bargaining agreement supported judgment on the ERISA claims).[4] Thus, Plaintiffs may recover under ERISA if they have adequately alleged a violation of the CBA by Denver Marble.

Through the Complaint and filed declarations, Plaintiffs assert that Denver Marble is a party to the CBA and is failing to meet its obligations thereto. (*See, e.g.*, Compl., ECF No. 1, at 6–7; Stupar Decl. at 3–4; 2d Stupar Decl. at 3–5.) They allege that the CBA required Denver

---

[3] Plaintiffs authenticated and filed their collection procedures, which are applicable to all three entities, with the Motion. (ECF Nos. 26-1, 26-2.) They then attest that each Plaintiff is "governed by Amended Restated Agreement and Declaration of Trust," but they only attach the trust agreement for one of the three Plaintiffs, IPF ("Trust Agreement"). (ECF Nos. 26-1, 26-3.) The Court notes that neither of these documents imparts Denver Marble—a non-signatory—with any obligations whatsoever.

[4] *See also, e.g., Trustees of Eighth Dist. Elec. Pension Fund v. Gietzen Elec., Inc.*, 898 F. Supp. 2d 1193, 1197 (D. Idaho 2012) ("That is, the contractual agreement (in this case, the collective bargaining agreement's contribution obligations) exists to identify the parties' . . . respective rights and obligations, while also being subject to whatever law surrounds that agreement's enforcement (in this case, ERISA).").

Marble to submit monthly fringe benefit remittance reports and pay monthly fringe benefit contributions to Plaintiffs for each hour of work performed within the scope and geographic area of the CBA. (2d Stupar Decl. at 3). The contributions due each month should have equaled the hours worked multiplied by the applicable hourly rate specified in the CBA. (*Id.*) Based on "fringe benefit reports" submitted during the relevant time, Plaintiffs allege that Denver Marble performed covered work under the CBA, without remitting benefit contributions, from at least September 2015 to January 2016. (*Id.*)[5] Plaintiffs continue that Denver Marble is aware of its obligations—having submitted some contributions in the past—but that it ignored Plaintiffs' attempts to receive payment. (*Id.*) Accordingly, Plaintiffs assert, Denver Marble's failure to remit the required contributions and accrued interest is a breach of its obligations under the CBA; is a violation of 29 U.S.C. §§ 1145 and 1132(g)(2); and obligates Denver Marble to pay the full amount of its delinquent contributions under the terms of the CBA, plus interest and reasonable attorneys' fees and costs. *See, e.g.*, *Mile High Rodbusters, Inc.*, 82 F. Supp. 3d at 1243.

However, there is an elephant in the room. As pleaded and clarified by Plaintiffs, there is no question that the CBA itself is at the heart of this action, but they have failed to file that contract for the Court's consideration. Some courts have not found it strictly necessary for a plaintiff to attach a collective bargaining agreement in a matter seeking ERISA relief by way of default judgment. *See, e.g.*, *Bd. of Trustees, Colorado Sheet Metal Workers' Local 9 Family Health Plan v. J & C Stainless Fabricating Co.*, No. CIV 07CV01970REBMEH, 2009 WL 306731, at *2 (D. Colo. Feb. 6, 2009) (entering default judgment without a copy of such an agreement). Others have had the benefit of such a contract. *See, e.g.*, *Mile High Rodbusters, Inc.*, No. 1:13-cv-00214-REB-KLM, at ECF No. 42-11. In light of the discrepancies outlined below,

---

[5] *But see* Section III.B, *infra*.

the Court finds it requires the CBA; therefore, Plaintiffs shall file the CBA concurrently with any renewed default judgment motion they choose to submit.

### B. The Court cannot divine the extent of relief requested at this time.

A final default judgment cannot be entered against a party until the amount of damages has been ascertained. *Herzfeld v. Parker*, 100 F.R.D. 770, 773 (D. Colo. 1984) (citing 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure: Civil* § 2692 at 465–66 (1983)). Rule 55(b)(2) empowers a judge to hold hearings "or order such references as it deems necessary and proper" to establish the damage award. However, the decision to enter the judgment is discretionary. *Gomes v. Williams*, 420 F.2d 1364 (10th Cir. 1970). Further, "[a]lthough upon default the factual allegations of a complaint relating to liability are taken as true, those allegations relating to the amount of damages suffered ordinarily are not." *Reg'l Dist. Council*, 82 F. Supp. 3d at 1243 (quoting *Dundee Cement Co. v. Howard Pipe & Concrete Prods. Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983)). Finally—and most importantly here—"[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

The relief available in an ERISA case regarding failed contributions pursuant to a collective bargaining agreement is statutorily clear. In 29 U.S.C. § 1132 actions seeking to enforce 29 U.S.C. § 1145, a court *shall* award:

> **(A)** the unpaid contributions,
>
> **(B)** interest on the unpaid contributions,
>
> **(C)** an amount equal to the greater of—
>
>> **(i)** interest on the unpaid contributions, or
>>
>> **(ii)** liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such

> higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> **(D)** reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>
> **(E)** such other legal or equitable relief as the court deems appropriate.

29 U.S.C.A. § 1132(g)(2). Unlike the clarity with which the statute outlines relief, Plaintiffs' contradictory assertions have muddied any current attempt at damage calculation by the Court.

First, Plaintiffs have not consistently alleged period(s) during which contributions were wrongfully withheld. While parts of the Motion, filed April 9, 2018, and the Complaint, filed August 5, 2016, state that "Denver Marble has failed to submit all contributions owed to Plaintiffs *since* September 2015" (Motion at 10; Compl. at 5 (emphasis supplied)), other parts of the Motion and concurrent declaration both indicate that the relevant, limited time period of non-payment is September 2015 to January 2016. (Motion at 10; 2d Stupar Decl. at 3–4.) All of this is contrary to a different portion of the Complaint, which states: "Denver Marble has failed to submit all amounts owed to [Plaintiffs] since *December* 2015." (Compl. at 5 (emphasis supplied).)[6]

More problematically, Plaintiffs have not been consistent as to the amount they seek. While the Complaint calculates the *total* amount owed is **$12,563.82** *including* interest and/or liquidated damages then accrued, the two Stupar Declarations, authored many months later, both aver *pre-interest* owed contributions of **$16,816.91**. (Compl. at 5; 2d Stupar Decl. at 4; Stupar Decl. at 3–4.)[7] Quite simply, it appears to the Court that the post-default declarations have

---

[6] Going on to add that "Defendant has failed and refused to pay contributions for hours worked by its employees during the months of December 2015 through *February* 2016." (Compl. at 5 (emphasis supplied).)

[7] This figure was also repeated in the First Motion. But the citation for that calculation, ECF No. 21-2, does not exist on the record.

enlarged the *pre-interest* figures alleged in the Complaint. Additionally, both declarations imply possible *ongoing* contribution failures: "To the extent that Denver Marble has performed covered work after January 2016, the company also owes [Plaintiffs] additional contributions . . . in an amount that is not currently known." (2d Stupar Decl. at 5; Stupar Decl. at 4.) These discrepancies between the content of the various declarations and the Complaint give the Court pause as to the accuracy of the figures reflected in the pleadings.

Of course, as Plaintiffs point out, "the total amount known to be due and payable by Denver Marble . . . will not be fixed until [***and unless***] the Court enters judgment in this matter." (Compl. at 5) (bracket material and emphasis supplied). But the growing interest or availability of liquidated damages does not bear on Plaintiffs' inconsistency regarding the relevant time periods or amount of the underlying debt. Therefore, the Court does not consider the damages portions of this matter to be well-pleaded and certainly cannot take them as true. Because of the Court's obligation to limit damages to what has been pleaded, Plaintiffs must reconcile their inconsistencies. Finally, the Court declines to entertain Plaintiffs' requests for interest, liquidated damages, or attorneys' fees and costs unless and until the underlying unpaid contribution issue has been resolved.

## IV. CONCLUSION

For the reasons stated above, the Court **DENIES WITHOUT PREJUDICE** Plaintiffs' Renewed Motion for Entry of Default Judgment and for an Award of Attorneys' Fees and Non-Taxable Costs. (ECF No. 26). Should they choose to pursue this civil action any further, Plaintiffs shall renew the Motion. The second renewed motion shall explain the damages discrepancies noted herein and shall include **(1)** a properly authenticated copy of the CBA; **(2)** properly authenticated copies of the "fringe benefit reports" and/or other documentation showing

the amount and timeframe of unpaid contributions alleged due under 29 U.S.C. § 1132(g)(2)(A). Together with the renewed motion, Plaintiffs shall further submit revised and/or updated affidavits showing **(3)** the current interest due (29 U.S.C. § 1132(g)(2)(B)) and **(4)** the current additional interest or statutory liquidated damages owed ((29 U.S.C. § 1132(g)(2)(C))). The Court will not entertain any argument for attorneys' fees beyond what has already been submitted. Finally, because Plaintiffs have clarified they no longer seek injunctive relief, the portions of the Complaint requesting it are **DISMISSED WITH PREJUDICE**.

DATED this 31st day of January, 2019.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge